Very well, Mr. Moss, good afternoon. You may proceed. Good afternoon, judges, and I do apologize for the technical problems I'm having on my end. I've had my IT people look at it and they can't figure it out on my end, but I do apologize. I would prefer to be doing this through video, but I do appreciate the accommodation. I represent Mr. Slater. We're not challenging any factual findings below. We think the facts are very clear in this case, that the police did not have reasonable suspicion to stop him and his companion in this case. The case law from this court is quite clear that generic identifiers such as blackmail and geographical and temporal proximity to a reported offense are simply not enough to constitute reasonable suspicion because those descriptors encompass too broad a swath of the community. Specifically, in this case, the officer testified that there was a robbery that occurred and about ten minutes after, the description of the robbers was they were wearing dark pants and a brown hoodie. Also two black males. About ten minutes afterwards, an officer saw Mr. Slater and his companion, Mr. Caldwell, walking about two to three blocks away from where the call came in. The officer felt like they matched that specifically. Anthony Caldwell, the companion of Mr. Slater, matched the description of the robbers. However, the undisputed testimony establishes that there is no match. In the addendum, there are photos of Mr. Caldwell's clothing. It's very clear his pants are faded, light blue jeans. They're not dark pants. The hoodie that he is wearing is a gray hoodie. It's closer to the color white than it is to the color brown. And he is wearing a jacket over that hoodie, but that hoodie is light khaki. It's not brown. So the specificity is simply lacking in this particular case. Even if this court were inclined to conclude that the descriptors of Caldwell were sufficient, we would submit that the authority to stop Mr. Caldwell does not automatically transfer to Mr. Slater because, in this case, the officer stops Mr. Caldwell and Mr. Slater, and then he conducts a frisk of Mr. Caldwell, and he finds nothing incriminating, no firearm. It's only then that he decides to frisk Mr. Slater, which we contend he had no basis to do so. The court's cases, and I think most of them have been summarized in the briefing, but they're really quite clear. Geographical and temporal proximity is not enough, and I think the three leading cases are Quinn, Walker, and Juvenile TK, although there are some others that are relevant as well. I'd like to briefly kind of address those cases and why the facts of this case are not sufficient to constitute reasonable suspicion. Specifically in Quinn, we did have a white male that the suspect described as a white male with a blue hoodie. It turns out he was only wearing a blue T-shirt, but in that case, he was seen emerging from an alley at 3 a.m. with very few pedestrians in the area, and, and this is critical, suspicious reaction to the police. That is a key fact that basically shows this court requires more than a generic identifier such as white male. Mr. Moss, one of the things you just mentioned was the lack of presence of other pedestrians in the area. What's the evidence in this case about the presence of any other individuals? Well, it occurred about 7.30 in the evening. This was a neighborhood. There were business establishments around, and I believe the officer or the testimony from the detective testified it would not have been unusual to see black African American citizens walking around through this area, especially at 7.30 p.m. in the evening. Now, the record is clear, however, that the arresting officer, Mr. Slater and Mr. Calder, are the very first people he saw. He saw them first, so I don't believe he saw anyone else at that particular time, but again, the other detective that testified indicated this is a fairly, you know, it's not a deserted area, it's not a commercial area, and given the time of the evening, it would not have been unusual to see people walking around in the area. Suppose, Mr. Moss, that there is reasonable suspicion on Caldwell. You said earlier you don't think that suspicion, and the way you put it was automatically transfers to Mr. Slater. Could you elaborate on that? Why do you think that reasonable suspicion on Caldwell would not be sufficient also to frisk the companion? Yes, I can elaborate on that, Judge. Thank you. Well, for one thing, while it's arguable that Mr. Caldwell, he certainly was wearing a hoodie, we don't believe that's sufficient, but if this court were inclined to find, well, Kaki is kind of like Brown and he was wearing a hoodie, if this court were to conclude that that was sufficient, the identifiers as applied to Mr. Slater are nonexistent. I guess I won't say nonexistent. The police officer testified he was wearing dark pants, but that's it. That's dark pants. In contrast, he's not wearing a hoodie. He's wearing instead like a winter coat, a padded jacket, and I know the government takes issue with that description. However, I do address that in my reply brief. It's very clear the officer, the first time he frisked Mr. Slater, could not feel any firearm on his person because of the jacket. Later when he's restraining Mr. Slater, he could not restrain him, and I think a full Nelson, because of this heavy padded jacket. So it's a winter coat. This occurred in November. So this is no way it could be confused as a hoodie, and although there are some references by this court to shedding clothing, specifically I'm thinking of green, green which involved a case where the suspect was wearing a black raincoat, which he got rid of after the bank robbery. This is not a case where you're talking about shedding clothing. He's wearing something totally different that was not described, and it's simply not something that could have been shedded. My question is really going to your point about whether there's any transfer, as you put it, of reasonable suspicion. Do you think we have to analyze each of the two men separately, or does suspicion as to Caldwell give the police reason to frisk the companion whether he matches the description or not? I think our position would be you do have to analyze them separately, and we think it's critical that he does frisk Caldwell, and Caldwell is clear. There's no firearm. There's no evidence, and we don't believe Mr. Slater's association, and that's what we're talking about here, mere association with someone that arguably barely fits the description is enough to provide police with authority to also frisk Mr. Slater because Fourth Amendment rights are personal. I'm thinking of, and I know the court's case law is specific. It has to be individualized regarding people in general or people specifically. I didn't mean there's any question about that. I just wondered whether if they had a reason to believe Caldwell was one of the perpetrators and Slater was not with him shortly after the incident. Does that itself create some suspicion as to Slater? While there might be suspicion and might be a basis for a consensual encounter, we don't believe there's a basis for the stop and the ensuing frisk that occurs. I'm not sure how much time I'm, I think I'm into my rebuttal. Yeah, would you like to save the balance? I would like to save whatever I can for my rebuttal, please. Very well. You have about a minute left. Thank you. We'll give you a minute for about, Mr. Wagner, we'll hear from you. Thank you. May it please the court, David Wagner for the United States. I'd like to start by addressing Judge Colleton's question about whether Mr. Slater and Mr. Caldwell need to be evaluated separately or whether they can be considered together. I think based on the Supreme Court's decision in the Harvazoo case, it's very clear that it's a totality of the circumstances inquiry. So the court should be looking at the totality of the circumstances as a whole, and I don't think it's appropriate to divorce, so to speak, Mr. Slater from Mr. Caldwell. Mr. Slater's association with Mr. Caldwell, who did quite closely match the description of one of the reported robbers, is an appropriate basis to support reasonable suspicion to stop him as well. Well, you think they had suspicion to stop Slater even if there was no reason to believe he was one of the robbers just because he was with Caldwell? No, I'm not saying that. In this case, the reason they had reasonable suspicion to stop Mr. Slater as well is because the report was of two robbers, both black men traveling on foot. So considering that with the fact that Mr. Slater was with Caldwell who closely matched the description and the totality of the circumstances, again, the officers were entitled to consider their association. I agree. It would be different. I think the calculus would be different if there was a report of only one robber, but here the report was very clear it was two. And because there was... Would a reasonable officer have to believe that the description was just wrong as to Slater then in order to have suspicion to frisk him? A reasonable officer wouldn't have to believe that the description was wrong. A reasonable officer could believe that Mr. Slater had put on a black coat. And I think from the court's opinion in Quinn, it's very clear that officers can take into account the possibility that suspects may put on or put off clothing in order to avoid detection. Another just sort of fundamental point here is the standard for reasonable suspicion, I think. We're not talking about perfect suspicion. We're talking about reasonable suspicion. Officers, of course, have to have more than a hunch, but they just need to be able to point to specific articulable facts that warrant a brief stop to investigate further, and that's exactly what the officers did in this case. I'd like to go back, though, and talk about a fact that hasn't been discussed yet, and that is what the officers knew when the 911 call first came in was broadcast by dispatch. At that point, they already knew that there had been a string of robberies in the area involving victims lured over Craigslist, and they already had some information about the direction that the robbers had run in those previous robberies. Officer Grine testified that the prior robbers had, quote, often run to Parker Square, end quote. And, of course, that's the location the officers were when the call came in, in the Parker Square apartment building. Officer Hill testified at trial that the direction the prior robbers fled, quote, would have been coming toward us, end quote. He also said the robbers were known to frequent either the Parker Square apartments or the apartment complex directly south. At the moment that the call came in, the officers had some reason to believe that this robbery might be connected with the other robberies which had recently occurred, and that, if so, this suspect might be coming in that direction. We're having a little problem with the audio. Mr. Moss, could you make sure your phone is muted? Can you hear me better now, Your Honor? Yes. Okay. I think there's already been a lot of description about how Mr. Slater and Mr. Caldwell matched the description of the suspects in several respects. The district court, of course, found that Mr. Caldwell was wearing a brown hoodie. That was the finding because the photographs were not put in during the suppression hearing. However, I don't think, I'm not going to dispute that he was wearing a brown jacket with a gray hood, but I would say that, effectively, that's the same thing as a brown hoodie, particularly because, at the time, it was relatively dark outside and there was just some light from the street lights along the road. The stop was in close physical proximity of the crime, several blocks away, as Mr. Moss pointed out. It was within just a several-minute period of the crime. The testimony was that it would have been a few minutes before the officers called for backup, so approximately 10 minutes, I think, is a fair estimate. And then, of course, Slater and Caldwell were coming from the direction of the crime. I'd like to address the fact that Slater was not wearing a brown hoodie. Again, I think this is part of the totality of the circumstances inquiry, but reasonable suspicion has to leave room for the possibility that criminals may change their clothes to avoid detection. As I mentioned, I think the court's opinion in Quinn teaches this point clearly. Other cases that we've cited in the briefs, the Street case and the Arthur case, also stand for this point. Just to clarify what Mr. Slater was wearing, I don't think the record shows that he was wearing a black puffy coat. However, as I was preparing for this argument, I did go back and look at some dash camera video. That was not in the record, but just in the interest of disclosure to the court, the dash camera video I showed did show that Mr. Slater was wearing a dark puffy coat. So I'm not going to dispute, even though it's not a fact in the record, I don't dispute that that's what he was wearing. Again, I don't think it matters because of his association with Caldwell. I'd also like to... What was he wearing under the black puffy coat? I don't know the answer to that. On the videos that I viewed, he's only visible for a few moments as he's led away in handcuffs, and I could not tell what he was wearing under the coat. He did appear to be wearing dark pants, which was inconsistent with the description of dark pants worn by the suspects. What about the fact that Caldwell was wearing blue jeans and a khaki jacket, as Mr. Moss describes it, khaki? Do you think that qualifies as close enough to a brown hoodie and dark pants? Absolutely, particularly because it was dark outside at the time. So depending on the light, I think someone's, even if they were a lighter shade of blue jeans, could appear dark. I wouldn't say it's a khaki jacket. I think it was brown, and the district court found it was brown, but I don't want to get into a debate about color. The court can look at the images. I think it's close enough. It's close enough to a brown hoodie, particularly because the testimony was that he did have the hood over his head. So I think, effectively, it would appear to be a brown hoodie. I also wanted to talk about this notion that there needs to be some suspicious behavior to give the officers reasonable suspicion. I don't think that's correct at all. In fact, in this court's prior decision in juvenile TK, there was a dispute, a factual dispute, over whether the gray vehicle the officers were looking for had engaged in evasive maneuvers or suspicious turns. And this court found it was not necessary to rely upon the disputed facts about suspicious actions in order to find reasonable suspicion. Other cases, the Arthur case from the First Circuit and the Street case from the Seventh Circuit, also clearly instruct that suspicious behavior is not required. And that's because officers need to be able to account for the fact that if someone has committed a crime, they may purposefully act nonchalant in order to avoid suspicion. And then the court had a question about whether the record shows if there were other pedestrians in the area. I don't know that it does. I don't know that it... Mr. Moss may be correct that these were the first people the officers encountered. But I think the more important point is that when the officers encountered Slater and Caldwell, they sufficiently matched the description in order for them to make a stop. And I don't think the officers were required to fully complete a canvas of the potential area to rule out any other potential suspects, because that would mean they would have needed to let Slater and Caldwell go on their way and they would have been long gone before the officers finished the canvas of the area. I think it was reasonable to stop them without evaluating whether there were any other potential suspects in the area. Can you remind me how long after the robbery came the seizure here? It was right around 10 minutes, I think. We don't know exactly. The record doesn't say exactly. What the record shows is that the 911 call came in at effectively 7.29. The officers called for backup after making the stop at 7.40. And they said that they made the stop a few minutes before calling for backup. So right around 10 minutes, I think, is a fair estimate. What Mr. Slater is attempting to do here is essentially to ask this court to hold that so long as criminals change an article of clothing and act sufficiently nonchalant, officers cannot rely on other facts to stop them to investigate a recent crime. That's not the law. And unless this court has any other questions, I would ask the court to affirm. All right, thank you for your argument. Mr. Moss, if you're still with us, we'll hear from you in rebuttal. At this point, you may need to unmute your microphone. Well, we're not hearing you, Mr. Moss. We're seeing you're still connected, but we're not hearing you. So it looks like you need to unmute your microphone. Well, Mr. Moss, we'll give you one more try. Your microphone still shows that you're on mute, so we cannot hear you. If you are present and wish to make rebuttal, please turn your microphone on, and we'll hear from you. All right, we have no response from Mr. Moss, so we'll consider the case submitted. Thank you to both counsel for your arguments. The court will file an opinion in due course.